Randall T. Skaar (Pro Hac Vice)
601 Carlson Parkway, Suite 1050
Minneapolis, MN  55305
Phone: (612) 216-1700
Fax:  (612) 234-4465
skaar@sumiplaw.com
For Safegate

### UNITED STATES DISTRICT COURT

### DISTRICT OF ARIZONA

| | |
|---|---|
| SAFEGATE AIRPORT SYSTEMS, Inc. a Minnesota Corporation; and SAFEGATE INTERNATIONAL AB, a Corporation of Sweden, | No. 2:13-cv-00567-PHX-GMS |
| Plaintiffs/Counterdefendants, | |
| v. | **SAFEGATE'S OPENING** |
| RLG DOCKING SYSTEMS Inc., an Arizona Corporation; and Robert L. GAUGENMAIER, individually, | **CLAIM CONSTRUCTION BRIEF** |
| Defendants/Counterclaimants. | |

#### INTRODUCTION

Safegate asserts that Defendants RLG and Gaugenmaier ("RLG") infringe the claims of two related patents: US Patent 6,023,665 ('665) (exhibit A to docket #21) and US Patent 6,324,489 ('489) (exhibit B to docket #21).  Safegate asserts that RLG GIS206-2 product infringes claim 14 of the '665 patent and claims 1 and 11 from the '489 patent.

The asserted patents cover a system to aid pilots in docking aircraft at a gate.  The patents disclose a system the uses a Laser Range Finder (LRF) to monitor the position

and progress of an incoming aircraft and give the pilot feedback as too whether the aircraft is on the proper track to the gate, and when to stop.  The invention identifies the aircraft approaching the gate so that a proper track and stop point can be calculated.   This is done by matching certain aircraft features, such as the location of the nose, tail, wing, engine, etc., to a database of aircraft profile information stored in the invention.  Thus, if the nose, for example, is located at a certain location or has a certain shape, the aircraft may be identified as, for example, a 747.  Once the invention identifies the aircraft, the invention can calculate a proper track and stopping point based upon the known dimensions of a 747 that are in a database.  The aircraft can then be safely docked.

The primary difference between the '665 and the '489 patents is that the later issued patent, the '489, uses a second feature match to further identify an incoming aircraft.  Thus if the location of the nose of the aircraft was able to identify the aircraft as a 747, but there are 747s with different dimensions, and thus require different tracks and/or stopping points, more calculations may be need.  In such a case, the invention will then look to another feature, such as the location of an engine, to further identify the aircraft, and properly calculate and display the track and distance to the stopping point.

STIPULATED CLAIM CONSTRUCTION

The parties agree on the following claim construction:

Claim 14 of the '665 patent:

"means for generating light pulses" is a means-plus-function claim limitation and the structure that performs the recited function is a "Laser Range Finder" or LRF.

"means for collecting the light pulses reflected off said object" is a means-plus-function claim limitation and the structure that performs the recited function is a "Laser Range Finder" or LRF.

Claim 1 of the '489 patent:

"collecting means for collecting light pulses reflected off the detected object and for detecting a shape of the detected object in accordance with the light pulse" is a means-plus-function claim limitation and the structure that performs the recited function is a "Laser Range Finder" or LRF.

## CONTESTED CLAIM CONSTRUCTION

CLAIM CONSTRUCTION INTRODUCTION

The purpose of claim construction is to "determin[e] the meaning and scope of the patent claims asserted to be infringed." Markman v. Westview Instruments, Inc., 52 F.3d 967, 976 (Fed.Cir.1995) (en banc), aff'd 517 U.S. 370, 116 S.Ct. 1384, 134 L.Ed.2d 577 (1996). When the parties raise an actual dispute regarding the proper scope of these claims, the court, not the jury, must resolve that dispute. See id. at 979 (holding that claim construction is a matter of law).

MEANS-PLUS-FUNCTION CLAIM TERMS

Claim elements are sometimes expressed by the function that the element performs, rather than reciting specific structure. For example, "means for fastening" could be used instead of "bolt." These claim elements are referred to as means-plus-function claim elements. As set forth in 35 U.S.C. § 112, sixth paragraph, [1] means-plus-function claim elements are construed to

---

[1] "Element in Claim for a Combination.  An element in a claim for a combination may be expressed as a means or step for performing a specified function without the recital of structure, material, or acts in support thereof, and such claim shall be construed to cover the corresponding structure, material, or acts described in the specification and equivalents thereof."

cover the structure described in the specification, and equivalents thereof, that perform the function recited in the claim. Accordingly, in order to construe means-plus-function claim elements, the first step is to identify the claimed function. The second step is to identify the structure disclosed in the specification that performs the claimed function. *Cardiac Pacemakers, Inc. v. St. Jude Med., Inc.*, 296 F.3d 1106, 1113 (Fed.Cir.2002).

Claim 14 of the '665 patent and claim 1 of the '489 patent contain "means-plus-function" claim elements.  Thus the Court will need to determine the proper scope of the disputed claim terms by determining the structure in the specification corresponding to the *means* called out in the claim.

## TERMS IN DISPUTE

The '665 Patent

CLAIM 14

I. ***MEANS FOR PROJECTING*** SAID PULSES OUTWARDLY ONTO AN INCOMING OBJECT AND FOR REFLECTING SAID LIGHT PULSES OFF SAID OBJECT

The first element in dispute is the phrase above.  Pursuant to the Joint Claim Construction Statement filed by the parties (docket #67), the claimed function is not in dispute.  The dispute is over what structure is required to perform the "claimed function".  It is Safegate's position that to project light pulse requires at least one mirror.  RLG argues that two mirrors are required.

RLG's position is incorrect.  RLG improperly imports functions into the claim language that are not recited in the subject claim element.  This is evident in the Joint Claim Construction Statement where RLG explains why two mirrors and a stepper motor

4

are necessary: "(one for horizontal scan, one for vertical scan), each mirror separately controlled by a stepper motor".

RLG's proposed construction violates two principal tenets of claim construction. The first relevant tenet is that a court may not construe a means-plus-function limitation by adopting a function different from that explicitly recited in the claim. *Jvw Enterprises, Inc. v. Interact Accessories*, 424 F.3d 1324, 1331 (Fed. Cir., 2005) (citing *Micro Chem., Inc. v. Great Plains Chem. Co.*, 194 F.3d 1250, 1258 (Fed.Cir.1999). The second relevant tenet is that it is error to import the function(s) of a working device into the specific claims, rather than reading the claims for their meaning independent of any working embodiment. *Jvw Enterprises, Inc. v. Interact Accessories*, 424 F.3d 1324, 1331 (Fed. Cir., 2005) (citing *Rodime PLC v. Seagate Tech., Inc.*, 174 F.3d 1294, 1303 (Fed.Cir.1999).

RLG violates the above described tenets by reading a scanning function into the claim, where the claim calls only for a function to "project said light pulses…". RLG then imports unnecessary structure to perform the scanning function. Even though the patent specification describes a preferred working embodiment using two mirrors, it does not take more than one mirror to perform the claimed function of "projecting light pulses" in the subject claim element. Further, as the claim does not call for any scanning function, the importation of additional structure, a stepper motor and an additional mirror, is also contrary to law.

The proper claim construction is:

**[A MIRROR]** FOR PROJECTING SAID PULSES OUTWARDLY ONTO AN INCOMING

5

OBJECT AND FOR REFLECTING SAID LIGHT PULSES OFF SAID OBJECT

II. ***MEANS FOR DETECTING*** THE POSITION RELATIVE TO AN IMAGINARY AXIAL LINE PROJECTED FROM A PREDETERMINED POINT AND FOR DETECTING THE DISTANCE BETWEEN SAID OBJECT AND SAID PREDETERMINED POINT

Safegate's proposed claim construction for this claim element is that the structure for "means for detecting" is: "a microprocessor programmed to receive the distance data obtained from the laser range finder and compare it to the stored profile data about the object to determine"….

The "detecting" function in this claim calls for structure to both detect an aircraft's "position relative to an imaginary axial line", or the lateral position, and for detecting the distance between the aircraft and "said predetermined point", or the stopping point.

The '665 patent discloses that distance data gathered from the LRF is used to locate the aircrafts position relative to an imaginary axial line (Column 3, lines 1 – 9). The lateral offset from the center line is then calculated from this distance data.  (Column 10, lines 43 – 46; Figure 8 (116, 122)).[2]  The stopping point is calculated by the microprocessor by comparing the profile data in memory with the distance measurements received by the LRF.  (Column 10, lines 7 – 8; Figure 8 (124)).

RLG's proposed claim construction for this element is:  "Blocks of Figure 8, based upon angular step of 0.1 degree interval for horizontal ($\alpha$) and vertical ($\beta$) scanning, using Profile Table I to create a Comparison Table for the detecting task".

---

[2] Safegate mentions Fig. 7 in the Joint Claim Construction Statement.  That was a typographical error, and should have been Fig. 8.

Safegate agrees that Figure 8 discloses a preferred manner for detecting the lateral and longitudinal position of the incoming object, but the detail requested by RLG is far too great, and exceeds the amount of detail that is required to perform the "detecting" function, in violation of the holding in *Jvw Enterprises, Inc.*  To *detect* the position of an object relative to the Laser Range Finder, one only needs the data from the laser range finder, the profile information of the incoming object, and a microprocessor to compare the two.

The very nature of a range finder is to detect the distance from the range finder to a distant object.  The result given by a LRF is a distance measurement.  To detect the claimed lateral and longitudinal distances, then, the microprocessor compares the distance data from the LRF to the profile of the object already in memory, and performs the lateral and longitudinal distance calculations.  RLG's contention that the scanning in angular steps of 0.1 degrees, and the requirement of the creation of certain tables, is not required by the claim language, and is simply RLG's improper attempt to narrow the claim to avoid infringement.

The proper claim construction is:

[**A MICROPROCESSOR PROGRAMMED TO RECEIVE THE LRF DISTANCE DATA AND COMPARE IT TO THE STORED PROFILE DATA ABOUT THE OBJECT TO DETERMINE**] THE POSITION RELATIVE TO AN IMAGINARY AXIAL LINE PROJECTED FROM A PREDETERMINED POINT AND FOR DETECTING THE DISTANCE BETWEEN SAID OBJECT AND SAID PREDETERMINED POINT.

1

2

3      III. *A COMPARISON TABLE* IS GENERATED REFLECTING INFORMATION
       ABOUT THE LASER SCAN AND IS COMPARED WITH A PROFILE TABLE
4      INDICATING THE SHAPE OF KNOWN OBJECTS

5          This claim element is not in means-plus-function format.  Thus the task at hand is

6      not to import structure into the claim, but to clarify the ordinary meaning of the disputed

7
       term in light of one of ordinary skill in the art and the intrinsic evident.  Importing
8
       additional structure into the claim from a preferred embodiment would be error. It is well
9
       settled that the patent specification may be used to aid the court in interpreting the
10

11     meaning of disputed language; however particular embodiments and examples appearing

12     in the specification should not be read into the claims unless there is some compelling

13
       reason to do so.  *Constant v. Advanced Micro-Devices, Inc.*, 848 F.2d 1560, 1571
14

15     (C.A.Fed. (Cal.), 1988) (citing *SRI Int'l v. Matsushita Elec. Corp. of Am.*, 775 F.2d 1107

16     1121, 227 USPQ 577, 585 (Fed.Cir.1985) (en banc)).
17

18          The '665 patent, under the "Brief Description of the Drawings", describes Table II

19
       as a preferred embodiment of *a comparison table*.  A preferred embodiment of Table II is
20
       located on page 3 of 3 of the Certificate of Correction, attached to the end of the '665
21

22     patent.  Column 9, line 35, describes a comparison table: "Using data from the scans and

23     the data on the horizontal profile Table I, the microprocessor 26 creates a Comparison

24
       Table II.".  It is clear from the patent and its disclosure that a comparison table is simply
25

26     data generated from the LRF by the microprocessor.  Thus it is Safegate's position that

27     the proper construction of *a comparison table* is *data*.

28
            RLG's proposed claim construction is:  "Table II of 665 Patent, the basis for the

stored values is based upon an angular step of 0.1".  RLG advocates improperly

importing the structure of Table II into the claim.  Such importation is in violation of the

tenet of clam construction found in *Constant* , 848 F.2d at 571.  Further, Table II in the

patent is nothing more than an example of a data structure filed mostly with "xx",

demonstrating the exemplary nature of the table.   RLG's proposed construction makes

little sense in regard to its reference importing an exemplary table printed in the '665

patent as claim construction.  Further, defining the comparison table to require it store

values based upon "an angular step of 0.1" is a gross violation of the tenets of claim

construction. Id.  No such requirement is in the claim, and thus it would be improper to

construe the claim as proposed by RLG.

The proper claim construction is:

**[DATA]** IS GENERATED REFLECTING INFORMATION…

IV. A COMPARISON TABLE IS GENERATED REFLECTING INFORMATION
ABOUT THE LASER SCAN AND IS COMPARED WITH *A PROFILE TABLE*
INDICATING THE SHAPE OF KNOWN OBJECTS

The '665, under the "Brief Description of the Drawings", Table I is described as a

preferred embodiment of *a profile table*.  A preferred embodiment of Table I is located

on page 2 of 3 of the Certificate of Correction, attached to the end of the '665 patent.

Table I is "employed to establish the identity of an aircraft in the systems of present

invention".  Column 4, lines 32 -35.  Thus, the profile table contains data representing the

profiles of expected aircraft.  (*see also* Column 6, lines 18 – 20).  Thus it is Safegate's

position that the proper construction of *a profile table* is again *data* indicating the shape

of known objects.

RLG's proposed claim construction is: "*a derivative data collection structure as defined*". Though RLG appears in this instance to agree that a comparison table is *data*, it adds the terms "derivative" and "as defined" that makes the proposed claim construction unclear. The comparison table is never described in the '665 patent specification as *derivative*. If *as defined* means as only represented in exemplary Table I in the patent, that is violative of the tenet against reading particular embodiments and examples appearing in the specification into the claim. *Id*. It is clear from the claim language and the patent specification that a comparison table is just data in memory storing information about potential incoming aircraft.

The proper claim construction is:

**[DATA]** INDICATING THE SHAPE OF KNOWN OBJECTS

V.  A <u>DISTANCE DISTRIBUTION TABLE</u> IS GENERATED RECORDING THE
DISTRIBUTION OF DISTANCES FROM THE NOSE OF THE OBJECT TO THE
MEASURING DEVICE FOR EACH REFLECTED PULSE

A *distance distribution table* (DDT) is explained in the patent specification as data generated by the microprocessor to continually calculate the average stopping distance for the object or aircraft. (Column 10, lines 4 – 11). Thus again, the DDT is just ***data*** generated by a microprocessor.

RLG construes this table as: "a derivative data collection structure as defined". Safegate does, again, not understand the term "derivative" in this context, as it is not found in the patent specification or the claims. So to the phrase "as defined" is given no

meaning by RLG.  If *as defined*, however, means as imported from a preferred embodiment in the patent specification, then RLG's construction is violative of the tenet of claim construction against reading particular embodiments and examples appearing in the specification into the claim.  *Id.*

The proper claim construction is:

**[DATA]** IS GENERATED RECORDING THE DISTRIBUTION OF DISTANCES FROM THE NOSE OF THE OBJECT TO THE MEASURING DEVICE FOR EACH REFLECTED PULSE

The '489 Patent

CLAIM 1

V.   PROJECTING MEANS FOR PROJECTING LIGHT PULSES ONTO THE DETECTED OBJECT

The analysis of the *projecting means* means-plus-function limitation is the same as the *means for projecting* limitation made above in claim 14 section of the '665 patent. The claim construction should again be *a mirror*.

RLG makes the same errors of law in this instance as it did in claim 14 of the '665 patent.  RLG's proposed claim construction is:  "using 2 mirrors (one for horizontal scan, one for vertical scan), each mirror separately controlled by a step motor".  Again, it is improper to read a scanning function into the claim, and thus improper to make a stepper motor and a second mirror as structure that is part of the claim.

The proper claim construction is:

**[A MIRROR]** FOR PROJECTING LIGHT PULSES ONTO THE DETECTED OBJECT

1
2
3
4

VI. <u>COMPARING MEANS</u> FOR COMPARING THE DETECTED SHAPE WITH A PROFILE CORRESPONDING TO THE KNOWN SHAPE AND FOR DETERMINING WHETHER THE DETECTED SHAPE CORRESPONDS TO THE KNOWN SHAPE

5
6
7
8
9

It is Safegate's position that *comparing means* requires the structure of a microprocessor (CPU) that is programmed to compare two sets of data as described in the claim, or: "a microprocessor programed to receive LRF data regarding a specific object criteria, to determine a detected shape".

10
11
12
13
14
15
16
17
18

The patent discloses a CPU programmed to use data about a feature of the incoming aircraft that in then compares to profile data to determine if the feature detected matches a stored profile.   If a match is made then the system indicates to the pilot where to stop, as the system has information about the length and other dimensions of the aircraft, so that a proper stop position can be calculated.  Column 2, lines 30-60 and Figures 4B and 10 generally describe how the preferred embodiment makes the proper determination.

19
20
21
22
23
24
25

The general description of how the data is analyzed is to determine if a detected shape is a known shape is done by comparing the data gather by the Laser Range Finder, to the stored aircraft profile data.  As examples the patent lists aircraft nose height or shape as aircraft profile matching criteria. (cite).   Thus if the aircraft has a certain nose height or shape, for example, the CPU may be able to confirm an aircraft's type or model.

26
27

Thus the claim construction for *comparing means* would be:  *a microprocessor programed* to perform the recited function.

28

RLG's proposed construction is: "using Profile Table and Comparison Table to

check for the matched values echoed back from the projecting means, the data collection

and storage is based upon angular step of 0.1 degree." By this proposed claim

construction RLG again violates the tenets of claim construction law by imputing

structure and function into the claim that is not present or required. The terms "Profile

Table" and "Comparison Table" appear nowhere in the claim. Likewise, the angular step

of 0.1 degrees is not explicitly stated or implied in the claim. RLG improperly imports

function and structure from a working preferred embodiment of the invention, in

violation of the case law cited above. Further, RLG proposed construction consists

mainly of restating the function, and not identifying the structure. This appears to be

RLG's attempt to narrow the claim scope sufficiently to avoid infringement, and it is

improper.

The proper claim construction is:

[**A MICROPROCESSOR PROGRAMED TO RECEIVE LRF DATA REGARDING A SPECIFIC OBJECT CRITERIA, TO DETERMINE A DETECTED SHAPE**] FOR COMPARING THE DETECTED SHAPE WITH A PROFILE CORRESPONDING TO THE KNOWN SHAPE AND FOR DETERMINING WHETHER THE DETECTED SHAPE CORRESPONDS TO THE KNOWN SHAPE

VII. IDENTIFYING MEANS FOR IDENTIFYING WHETHER THE DETECTED OBJECT IS THE KNOWN OBJECT BY DETERMINING WHETHER THE DETECTED OBJECT HAS THE KNOWN FEATURE AT THE KNOWN LOCATION

Safegate contends that *identifying means* is a microprocessor programmed to

perform the stated function: secondary identification, or: a microprocessor programmed

to receive LRF data about the location of an additional feature on the detected object and

comparing that location data to the profile.

The function as stated in this claim element is the invention looking for additional aircraft criteria, if the previous *comparing* claim element in section VI fails to fully identify the incoming aircraft.

As the patent specification explains in Column 2 under the Summary of the Invention, there are times when identifying one aircraft criteria, like the nose position or shape, is not enough to fully identify the aircraft.  In such cases other aircraft criteria are to be scanned by the LRF and compared to a stored profile.  The patent specification discloses the position of the main gear, the position of the wings, the position of the tail and the position of an engine, as examples secondary aircraft criteria.  (Column 2, lines 50 – 60; Figure 11).  Thus Safegate's proposed construction is proper.

RLG's proposed construction is: "Calculating the threshold value of echoes from the two volumes Vi and Vo, using the formula of Vi/(Vi+Vo),  to determine whether a feature (such as engine) is in its expected location."  RLG's construction is improper as it misapprehends the stated *means*.  The means in this claim element is "identifying means" and is not the means for demonstrating how to calculate the position of an aircraft engine, as RLG proposes.   As the patent specification discloses many different secondary aircraft criteria, limiting the claim to the engine would be improper at any rate, as it is nothing more than the random importation of an example from the patent specification into the claim.

The proper claim construction is:

[**A MICROPROCESSOR PROGRAMMED TO RECEIVE LRF DATA**

14

**ABOUT THE LOCATION OF AN ADDITIONAL FEATURE ON THE DETECTED OBJECT AND COMPARING THAT LOCATION DATA TO THE PROFILE**] FOR IDENTIFYING WHETHER THE DETECTED OBJECT IS THE KNOWN OBJECT BY DETERMINING WHETHER THE DETECTED OBJECT HAS THE KNOWN FEATURE AT THE KNOWN LOCATION

The '489 Patent

CLAIM 11

Claim 11 is a process or method claim, not a means-plus-function type claim and not an apparatus claim. Such method claims are authorized by 35 U.S.C. § 101 that states: "Whoever invents or discovers *any new and useful process*, machine, manufacture, or composition of matter, or any new and useful improvement thereof, may obtain a patent therefor, subject to the conditions and requirements of this title." (emphasis added).

A method claim is used to define an invention as one or more acts. A method claim defines the invention in terms of what the invention does or how it does it, as opposed to what the invention is structurally. A method claim allows a patent applicant to separate the function of the invention from the structure of the invention.

The claim reads as follows:

> 11. A method for determining whether a detected object is a known object, the known object having a known profile and also having a known feature at a known location, the method comprising:
> (a) projecting light pulses onto the detected object;
> (b) collecting light pulses reflected off the detected object and for detecting a shape of the detected object in accordance with the light pulses;
> (c) comparing the detected shape with a profile corresponding to the known shape and for determining whether the detected shape corresponds to the known shape; and

> (d) identifying whether the detected object is the known
> object by determining whether the detected object has the known
> feature at the known location.

It is Safegates' position that little if any claim constructing is needed with respect to this claim.[3]  It is also Safegates' position that RLG's proposed claim construction is legal error.

RLG proposes to treat method claim 11 as if it were a means-plus-function claim, requiring unclaimed structure to be incorporated into the claim as further limitations.  For example, RLG's proposed construction following construction for "projecting light pulses onto the detected object": "step of projecting light pulses employing the means of Claim 1".  Such a position is contrary to law.  In *Generation II Orthotics v. Medical Technology Inc*, 263 F.3d 1356, 1368 (Fed. Cir., 2001), the Court stated:

> The district court determined that § 112, paragraph 6, applies to
> method claim 16 of the '169 patent and method claim 1 of the '806
> patent. In making this determination, the court relied solely on the
> fact that the limitations recited in these method claims were similar
> to the means-plus-function limitations recited in claim 1 of the '169
> patent.  We hold that the district court erred in its determination
> that paragraph 6 of § 112 applied to claim 16 of the '169 patent and
> claim 1 of the '806 patent. The district court's decision and
> reasoning directly contradict this court's previous holdings
> regarding the applicability of § 112, paragraph 6, to method claims.
> O.I. Corp. v. Tekmar Co., 115 F.3d 1576 1583, 42 USPQ2d 1777,
> 1782 (Fed. Cir. 1997). The mere fact that a method claim is drafted
> with language parallel to an apparatus claim with means-plus-
> function language does not mean that the method claim should be
> subject to an analysis under § 112, paragraph 6.

---

[3] One of the central tenants of claim construction law is that if a person of ordinary skill in the art would understand the term in its ordinary, everyday sense, there is no need to construe the term.  E.g., *Biotec Biologische Naturverpackungen GmbH v. Biocorp, Inc.*, 249 F.3d 1341, 1349 (Fed. Cir. 2001).

16

1       Thus the step of "projecting light pulses onto the detected object"

2   means simply what is says.  The claim element is not limited to any particular

3

4   structure and certainly not to the mirror or Laser Range Finder required in

5   claim 1.  Infringement in the case of a method claim is determined by whether

6   the accused device performs the steps of the method claim, not the structure of

7

8   the accused device. Thus it is error to import unclaimed structure into a

9   method claim in determining it scope.

10       Similarly, the remaining claim elements in Claim 11 are not limited to

11   any specific structure that may be found in claim 1 or elsewhere in the patent.[4]

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

---

[4] Neither RLG nor Safegate disputes any claim term in element (b).

17

Respectfully submitted,

**Skaar Ulbrich Macari, P.A**

DATE:  February 24, 2014

      By: /s/ Randall T. Skaar
      Randall T. Skaar (Pro Hac Vice)
      601 Carlson Parkway, Suite 1050
      Minneapolis, MN  55305
      Phone: (612) 216-1700
      Fax:  (612) 234-4465
      skaar@sumiplaw.com

      Scott G. Ulbrich (No. 027906)
      11811 N. Tatum Blvd, Suite 3031
      Phoenix, AZ 85028
      Tel: (602) 953-7800
      Fax: (602) 513-7356
      ulbrich@sumiplaw.com

      Attorneys for Safegate

## CERTIFICATE OF SERVICE

    I hereby certify that on February 24, 2014, I electronically transmitted the attached document to the Clerk' s Office using the CM/ECF System for filing and transmittal of a **SAFEGATE'S OPENING CLAIM CONSTRUCTION BRIEF** to the CM/ECF registrants.

s/ Randall T. Skaar