Jen-Feng Lee, SBN 204328, *pro hac vice*
jflee@ltpacificlaw.com
Kenneth K. Tanji, Jr., SBN 162273
ktanji@ltpacificlaw.com
**LT Pacific Law Group, LLP**
17800 Castleton Street, #560
City of Industry, CA 91748
T: 626-810-7200
F: 626-810-7300

Attorneys for Defendants
RLG DOCKING SYSTEMS INC.,
and ROBERT L. GAUGENMAIER

# UNITED STATES DISTRICT COURT
## DISTRICT OF ARIZONA

| | |
|---|---|
| SAFEGATE AIRPORT SYSTEMS, Inc. a Minnesota Corporation; and SAFEGATE INTERNATIONAL, a Corporation of Sweden, | CASE NO. 2:13-cv-00567-PHX-GMS |
| Plaintiffs/Counterdefendants, | **DEFENDANTS RLG's** Claim Construction **Opposition Brief** |
| vs. | Date:   April 25, 2014<br>Time:   9:00 am |
| RLG DOCKING SYSTEMS Inc., an Arizona Corporation; and Robert L. GAUGENMAIER, individually, Defendants/Counterclaimants. | Courtroom: 602 |
| Defendants/Counterclaimants. | |

Come now Defendants RLG Docking Systems, Inc, and Robert L. Gaugenmaier ("RLG", collectively) and for their Claim Construction <u>Opposition Brief</u>, state as follows:

---

**Defendants' Claim Construction Opposition Brief**

## I. Plaintiff's proposed constructions are broad and non-enabling

An element in a claim expressed as a means or step .. without recital of structure, material, or acts in support thereof, and <u>such claim shall be construed to cover the corresponding structure, material or acts described in the specification</u> and equivalents thereof. *36 U.S.C. §112, ¶6*. (emphasis added)

As will be seen below, Plaintiffs Safegate Airport Systems, Inc. and Safegate International AB ("Safegate", collectively) intend to unreasonably broaden its scope of exclusive right beyond what was provided by the disclosure in the specification.

The issue is: do we want Safegate to have that conceptual and broadened claim of monopoly (right to exclude the public) <u>not based upon what can be gleaned in the patent documents</u>, but based upon Safegate's whimsical proposals herein?

## II. Safegate's proposed construction should not be adopted

1. Claim 14 of 665 Patent: "means for projecting":

    a. <u>Safegate's proposed construction:</u> Mirror.

    b. After exchange of parties' respective proposed claim construction, RLG counsel immediately met and conferred with Safegate counsel, to confirm that Safegate's proposed "MIRROR" term was explicitly in its singular form and excluded the plurality form. See attached Exhibit I.[1]

    c. Safegate counsel emailed back, on 1/17/2014, and confirmed such singular "MIRROR" term. See the last page of Exhibit I.

    d. If Safegate wants to take the position of "at least one mirror" (see line 23, page 4 of Safegate's Opening Brief), Safegate should've done so

---

[1] Exhibit items A – H are in RLG's Opening Brief. Exhibit items I and J are attached in this Opposition Brief.

**Defendants' Claim Construction Opposition Brief**

in its Joint Status Report and Joint Claim Construction Statement filed on 1/27/2014, ECF Dkt. #067.

e. Using a single mirror is different from using two (or more) mirrors. The 665 Patent explicitly required two mirrors for projecting light out; the Safegate 30b6 Rep, in page 32 of the deposition, stated that the system did not teach other way of 2-D scanning (i.e., the only way is to have 2 mirrors, controlled by two step motors).

f. Did 665 Patent provide the technical contribution to the relevant field of a "means for projecting" of a "MIRROR" that performed the function intended by the patent for the purpose of aircraft identification and docking guidance purpose?

g. The use of a mirror is already done in prior art patents, see Graham 247 (a reflector/mirror 14), in Exhibit F, and Ichinose 102 (reflecting mirror 13), in Exhibit C.

h. Safegate's argument of NOT reading the structure into the function of "project said light pulse" into the claim can be correct, if (1) its "MIRROR" construction can perform the 2-D scanning function, and (2) it indeed invent the structure of a single "MIRROR" to perform that function.

i. Plaintiff's prosecution file, in responding the Patent Office rejection, stated explicitly, that the "means for directing" the laser pulse, is a mirror system not found in Schwab which did not teach "mirrors". This specific reference (SG0000558) is attached as Exhibit J.

j. Plaintiff's argument of 'Even though the patent specification describes a preferred working embodiment using two mirrors, it does not take more than one mirror to perform the claimed function of "projecting light pulses" in the subject claim element' is directly contradicted by its 30b6 Rep testimony, on page 31 of the transcript

**Defendants' Claim Construction Opposition Brief**

in Exhibit H, where the Safegate 30b6 Rep affirmatively stated that the system would not work (perform the needed 2-D scaning) if one mirror is taken away.

k. Finally, a "single v.s plural" patent issue distinction can be seen in the *Superior Fireplace v. Majestic Product* case, 270 F.3d 1358 (Fed. Cir. 2002).

l. In the *Superior Fireplace* case, Plaintiff asserted its 5,678,534 patent, entitled "HEATING APARATUS" (a fireplace) against Defendant. A key disputed issue is that the asserted claims have "rear walls", while the accused product only has **one** "rear wall". The Court, at 1371, cautioned that Plaintiff's attempt (to interpret the "rear walls" as singular "rear wall") to broaden its claim scope is against the policy of giving public notice re the patent specification and scope of right.

m. As such, there is simply no good reason to allow Safegate's proposed construction of "projecting means", or "means for projection" to be a single "MIRROR".

2. Claim 14 of 665 Patent: "means for detecting"

a. <u>Safegate's proposed construction</u>: A microprocessor programmed to receive the distance data obtained from the laser range finder and compare it to the stored profile data about the object to determine".

b. Plaintiff's proposed construction should fail for one simple reason: it attempts to unduly broaden its contribution to the relevant field of technology, in light of the already existing prior art patents.

c. What Plaintiff has proposed is **a concept, an idea**, which is broader than its scope of enablement. Abstract ideas are not patentable. *Diamond v. Chakrabarty*, 447 US 303 (1980).

**Defendants' Claim Construction Opposition Brief**

    d. To the extent such "a microprocessor .. receive distance .. compare to stored profile data" teach is enabling (which is not), the Table 479 patent, entitled "Apparatus for guiding the pilot of an aircraft approaching its parking position", in Exhibit G, already contained this enabling disclosure that's commensurate with the scope of notice to the public.

    e. The critical inquiry is: the "*quid pro quo*" intended by patent laws would not hold up if Plaintiff's "means for detecting" is not properly "construed to cover the corresponding structure" (*35 U.S.C. §112, ¶6*) disclosed in the specification, including the algorithm taught in the blocks of figure 8, using the angular step of 0.1 degree to compare scanned aircraft profile against the data structure defined in Table I, II and DDT as enabled.

    f. Safegate's attempt to disconnect from its enabling disclosure and to encompass a right to exclude far beyond the "means for detecting" contained within the 665 Patent should not be adopted.

3. Claim 14 of 665 Patent: "comparison table"

    a. <u>Safegate's proposed construction:</u> **data** from the LRF

    b. 665 Patent's specification must describe an invention understandable to that skilled artisan and show that the inventor actually invented the invention claimed. *Ariad v. Eli Lily*, at 1351.

    c. It cannot be disputed that a LRF is a prior art device NOT part of the 665 Patent. The "data from the LRF" claim meaning would not make sense, as this is already covered by Mann 681, in Exhibit D, where the "source of a laser radiation 7" (equivalent to the LRF in current 665 Patent) works to sense and gather data.

  d. Essentially, construing the "comparison table" to this "data from LRF" proposal would result in invalidation, because this is already disclosed by Mann 681's "source of laser radiation 7" that emits laser beams to sense/collect responsive pulse data of distance, azimuth, etc. This would be contrary to preserve the claim validity, per *Modine Mfg v. United States Int'l Trade*, 75 F.3d 1545, 1557 (Fed. Cir. 1996).

  e. Clearly, the 665 Patentee invents a data "structure" as discussed/disclosed in the specification. The Patentee did NOT invent "data" to be its "Comparison Table".

4. Claim 14 of 665 Patent: "profile table"

  a. <u>Safegate's proposed construction:</u> indicating the shape of known objects.

  b. Again, Safegate is asking the Court to completely ignore any portion of the enabling teaching in the patent, but asking the Court to give the "exclusive right to exclude" when the "data indicating the shape of known objects" feature exist on an accused products.

  c. The store profiled feature existed in the Tabel 479, at 4:24-26 ("The resulting profile is compared with profiles stored in the sensor store for the aircraft types in question and the type of aircraft is determined") shown in Exhibit G.

  d. To accept Safegate's broad and unreasonable interpretation of the "profile table" term is equivalent to invalidating it, because this implementation is already done by a prior patent.

5. Claim 14 of 665 Patent: "distance distribution table" (DDT)

  a. <u>Safegate's proposed construction:</u> data indicated the distance from the nose of the object to the LRF.

**Defendants' Claim Construction Opposition Brief**

    b. There is nothing within the specification to show that the inventor is enabling a person reasonably skilled in the art to practice "data indicated the distance from the nose of the object to the LRF".

    c. Tabel 479 taught "a 2D laser sensor is provided as the distance measuring device which surveys the front of an aircraft point" (in Abstract).

    d. To construe DDT as proposed by Plaintiff is to ignore its own invention of what a DDT is, in the working of the 2-D scanning to identify, detect and guide an aircraft.

6. Claim 1 of 489 Patent: "projecting means"

    a. <u>Safegate's proposed construction</u>: MIRROR.

    b. Safegate's 30b6 Rep confirmed that, in 489 Patent, there is no other "projecting means" taught. See deposition pages 67 – 68.

    c. Safegate's 30b6 Rep confirmed that, in page 31 of the deposition transcript, Exhibit H, that a single mirror will not work.

7. Claim 1 of 489 Patent: "comparing means"

    a. <u>Safegate's proposed construction</u>: Programmed CPU, programmed generally as in Figure 10.

    b. Did Safegate mean to say that to practice this element of its invention, there is no need to follow the specification of scanning an object (aircraft) at 0.1 degree increment to obtain scanned data and to compare the stored data in the Profile Table?

    c. Can a person "generally program" a CPU to perform identification of an aircraft and then guiding it to stop at the precise stopping point in front of a terminal gate?

8. Claim 1 of 489 Patent: "identifying means"
   a. <u>Safegate's proposed construction:</u> Programmed CPU, programmed generally as in Figure 11.
   b. RLG agrees with Safegate's proposed construction as part of the identifying means, however, the "passive/active" volume lacks clear definition, if Safegate's proposal is adopted.
   c. RLG's proposed construction encompasses Safegate's construction and is commensurate with the scope of the 489's patent contribution to the relevant field of technology.

9. Claim 11 of 489 Patent: step of "projecting light pulses onto the detected object".
   a. <u>Safegate's proposed construction:</u> NONE (as stated in Safegate's Joint Claim Construction Statement, ECF Dkt. #067)
   b. Nothing to oppose.
   c. To the extent the proposed construction is "MIRROR", RLG restated its arguments in the "means for projecting" portion.

10. Claim 11 of 489 Patent: step of "comparing the detected shape with a profile corresponding to the known shape and for determining whether the detected shape corresponds to the known shape"
    a. <u>Safegate's proposed construction:</u> comparing the detected object profile to the known profile to see if the object type can be determined.
    b. While 489 Patent provided certain concrete teaching re the execution/performance of "comparing the detected shape with a profile corresponding to the known shape and for determining whether the detected shape corresponds to the known shape", it

cannot be dispute that the laws of nature, physical phenomena, and abstract ideas have been held not patentable. *Diamond v. Chakrabarty* 447 US 303 (1980); *Parker v. Flook,* 437 U. S. 584 (1978).

c. The step c) in Germany patent application DE 43 01 637 A1 (see bottom of page 2 in the English translation in Exhibit E) provides the description of "making a comparison with the nominal values of a fuselage nose model stored in the control and evaluation device and predetermined by the type of aircraft".

d. Supreme Court's famous patentability/infringement ruling is still cited today: That which infringes, if later, would anticipate, if earlier. *Peters v. Active Mfg. Co.,* 130 US 626 (1889)

e. To adopt Safegate's broad (and abstractly conceptual) construction means that Germany 637 A1 anticipates this and thus invalidates this. This would be against the canon of construction to preserve validity.

11. Claim 11 of 489 Patent: step of "identifying whether the detected object is the known object by determining whether the detected object has the known feature at the known location".

   a. <u>Safegate's proposed construction</u>: further identifying the object type by checking to see if it has a specific feature at known location.

   b. Again, Safegate's unreasonably broad and abstractly conceptual meaning would not fit the purpose of a fair patent exchange: enriching the public by the enabling disclosure that is the patentee's invention.

### III. CONCLUSION.

In every disputed proposed construction, Safegate sought to avoid its own "preferred embodiment". A claim construction that excludes a preferred embodiment ... 'is rarely, if ever, correct.' *SanDisk Corp. v. Memorex Prods., Inc.*, 415 F.3d 1278, 1285 (Fed.Cir.2005)

There is simply no point for Safegate patents to describe "preferred embodiment" when its own interpretation of its claim meaning stays away from such "preferred embodiment".

To allow Safegate's broad and unreasonable construction is to vitiate the purpose of patent laws, where the *quid pro quo* requires the fair exchange of "right to exclude" v.s. concrete and enabling disclosure.

If Safegate's proposed constructions are adopted, it is to set a policy where people will rush to the Patent Office and file all sorts of "inventions" and then claim that any conceptual and functional construction would be infringing, despite the "infringers" having done nothing pursuant to the teachings that were specified within the four corners of the patent document.

It is respectfully urged that the Court should not adopt any of Safegate's proposed construction.

Dated:  March 10, 2014

/s/Jen-Feng Lee

Jen-Feng (Jeff) Lee, *pro hac vice*
Kenneth K. Tanji, Jr.
Attorneys for Defendants

**Defendants' Claim Construction Opposition Brief**

**PROOF OF SERVICE**

The undersigned certifies that the foregoing document <u>Defendants RLG's Claim Construction Opposition Brief,</u> was filed electronically in compliance with Local Rule 5.5 and Federal Rules of Civil Procedure.  As such, this document was served on all counsel deemed to have consented to electronic service.  Local Rule 5.5 (h). All other counsel of record or per se parties not deemed to have consented to electronic service were served with a true and correct copy of the foregoing by U.S. Mail, as identified below:

NONE.

On this 10th day of March, 2014

/s/Jen-Feng Lee_____
Jen-Feng Lee