# UNITED STATES DISTRICT COURT

## DISTRICT OF ARIZONA

| | |
|---|---|
| SAFEGATE AIRPORT SYSTEMS, Inc. a Minnesota Corporation; and SAFEGATE INTERNATIONAL, a Corporation of Sweden, | CASE NO. 2:13-cv-00567-PHX-GMS |
| Plaintiffs/Counterdefendants, | **[proposed] Claim Construction Order** |
| vs. | |
| RLG DOCKING SYSTEMS Inc., an Arizona Corporation; and Robert L. GAUGENMAIER, individually, Defendants/Counterclaimants. | |
| Defendants/Counterclaimants. | |

In the morning of April 25, 2014, the Court held a claim construction hearing, with counsel for Plaintiffs and Defendants making appearances.

Having considered the papers of the parties' briefing and counsel's arguments, the Court here by made the ruling below:

**[proposed] Claim Construction Order**

## I.      The Laws of Claim Construction.

"It is a 'bedrock principle' of patent law that 'the claims of a patent define the invention to which the patentee is entitled the right to exclude." *Phillips v. AWH Corp.* 415 F.3d 1303, 1312 (Fed. Cir. 2005; en banc)

Claim construction is from the perspective of one of ordinary skill in the pertinent art at the time the patent was filed. *Chamberlain Group v. Lear Corp.* 516 F. 3d 1331, 1335 (Fed. Cir. 2008).

Whatever the specific articulation, the test requires an objective inquiry into the four corners of the specification from the perspective of a person of ordinary skill in the art. Based on that inquiry, the specification must describe an invention understandable to that skilled artisan and show that the inventor actually invented the invention claimed. *Ariad v. Eli Lily*, at 1351.

Courts give claim terms their "ordinary and accustomed meaning as understood by one of ordinary skill in the art at the time of the invention in the context of the entire patent". *Alloc, Inc. v. Int'l Trade Comm'n*, 342 F.3d 1361, 1368 (Fed. Cir. 2003).

An Examiner's understanding of a term is evidence of the understanding to one having skill in the art. *Salazar v. Procter & Gamble Co.*, 414 F.3d 1342, 1347 (Fed. Cir. 2005)

In claim construction, courts examine the patent's intrinsic evidence to define the patented invention's scope. This intrinsic evidence includes the claims themselves, the specification, and the prosecution history. *Phillips*, at 1314. Other asserted or asserted claims can also aid in determining the claims meaning because claim terms are typically used consistently throughout the patent. *Id.*

A patentee may define his own terms, give a claim term a different meaning than the term would otherwise possess, or disclaim or disavow the claim scope. In these situations, the inventor's lexicography governs. *Philips*, at 1316.

---

**[proposed] Claim Construction Order**

Although the specification may aid the court in interpreting the meaning of disputed claim language, particular embodiments and examples appearing in the specification will not generally be read into the claims. *Comark Commc'n v. Harris Corp.*, 156 F.3d 1182, 1187 (Fed. Cir. 1198).

A claim construction that excludes a preferred embodiment ... 'is rarely, if ever, correct.'  *SanDisk Corp. v. Memorex Prods., Inc.*, 415 F.3d 1278, 1285 (Fed.Cir.2005)

The Court must construe the claims to preserve their validity. *Modine Mfg. Co. v. United Status Int'l Trade Comm'n*, 75 F.3d 1545, 1557 (Fed. Cir. 1996).

A court is authorized to consider extrinsic evidence in construing claims, such as "expert and inventor testimony, dictionaries and learned treatises". *Markman*, 52 F.2d at 980.

A element in a claim expressed as a means or step .. without recital of structure, material, or acts in support thereof, and such claim shall be construed to cover the corresponding structure, material or acts described in the specification and equivalents thereof. *36 U.S.C. §112, ¶6*.

The "structure disclosed in the specification is 'corresponding structure' only if the specification or prosecution history clearly links or associates that structure to the function recited in the claim. This duty to link or associate structure to function is the *quid pro quo* for the convenience of employing 36 U.S.C. §112, ¶6. *Suffran v. John & Johnson,* 712 F.3d 549, 562 (Fed. Cir. 2013)

For the "means plus function" claim terms, this Court is mindful of the "corresponding structure" described in the 665 Patent (and the 489 Patent), so as to give the proper scope of protection to the patentee and to properly notify the public of the scope of the disclosed technology, pursuant to the *36 U.S.C. §112, ¶6* mandate, so as to ensure that Plaintiff's patent claim is commensurate with its scope of disclosure and enrichment to the relevant field of technology.

To the extent the patent's method claims are construed, they are given the reasonable scope of interpretation consistent with the specification based upon what

**[proposed] Claim Construction Order**

can be gleaned in the patent documents, so as to fulfill the rightful *quid pro quo* of the patent bargain.

In the context of these authorities, the Court made the findings below.

## II. The brief overview of Safegates' Patents-in-Suit

Plaintiffs (collectively "Safegate") assert two patents: 6,023,665 ("665 Patent) and 6,324,489 ("489 Patent"), collectively, Patents-in-Suit, that are in the technology field of detecting, identifying, verifying and tracking a moving object (aircraft), for the purpose of guiding such aircraft to its docking destination (the gate in an airport terminal).

Both Patents-in-Suit are titled "AIRCRAFT IDENTIFICATION AND DOCKING GUIDANCE SYSTEMS".

665 Patent was the parent application, upon which 485 Patent was based. 485 Patent contained additional teaching/disclosure (the Inner Volume / Outer Volume feature, Vi/Vo, to be discussed later), building upon the same hardware structure and data/algorithm structure of the 665 Patent.

Their inventive substance is briefly stated herein below.

### 665 Patent

The 665 Patent disclosed and claimed a system (element 10 denoted in 665 Patent) that employs a Laser Range Finder (LRF 20) (a known art product that is not part of the invention of 665 patent, other than the way it is used for the patented system/method), to send out light pulses to an aircraft taxing on the runway of an airport.

The system, based upon its architecture taught in the patent, performs the operation of detecting, identifying, tracking and then guiding the aircraft to the proper docking point at an assigned gate based upon airport control tower's instruction.

**[proposed] Claim Construction Order**

The patented system has three mirrors: a calibration mirror 68 for initial system calibration and two mirrors for 2-dimensional (2-D) scanning of the airfield. (The mirror 68, for calibration use, is not in the scope of claim construction dispute and will no longer be mentioned in this order.)

In accordance with the disclosure of 665 Patent, the LRF does not move. The 2-D scanning is accomplished by the two step motors that move around the two mirrors (21/22).  (Although 665 Patent talked about a fixed LRF being the "preferred" embodiment, there was NO other embodiment disclosed.)

In order to identify the shape of the aircraft 12 (so that the aircraft can be guided to the proper stopping point to the appropriate docking gate), the light pulses from the LRF is directed to scan the airfield in a two-dimensional fashion, under the means of two mirrors 21/22 and two step motors 24/25, which are in turn controlled by a microprocessors 26.

A very brief but succinct disclosure of this projecting means is given at 5:48 − 53 of 665 Patent:

"The scanning by the laser is done with mirrors. One mirror 22 controls the horizontal angle of the laser while the other mirror 21 controls the vertical angle. By activating the step motors 24, 25, the microprocessor 26 controls the angle of the mirrors and thus the direction of the laser pulse."

The scanning of the aircraft is done at an angular step of 0.1 degree; the acquired data points are then compared to stored profiles, defined as Table I in the 665 Patent.

Throughout 665 Patent (and 489 Patent as well), all the calculation and data structure to compare the scanned data points (for purpose of comparing to stored aircraft profile) is based upon the teaching of angular step of 0.1 degree.

The Court understands that this 0.1 degree angular step interval, as an example of specific implementation of the invention, may not be the only workable

**[proposed] Claim Construction Order**

embodiment of the invention and some reasonable range (of the angular step interval) may be within the scope of Plaintiff's technical contribution.

As such, it is understood that the 0.1 degree is a preferred implementation value and the invention is not strictly limited by this 0.1 degree interval. Defendants agreed and conceded that an interval range of 0.01 to 1 degree will also work.

The system maintains horizontal and vertical Table I for the aircrafts that it will be asked to guide towards the proper docking position in front of a gate.

Based upon the 2-D scanned data points, the system then creates a Comparison Table II, for continuing tracking of the aircraft.

During each scan (at the acceptable angular interval, both vertically and horizontally), the microprocessor 26 also generates a Distance Distribution Table (DDT), which is used to calculate the average distance to the stopping point 53.

The system also uses Comparison Table II to calculate a tracked aircraft's lateral offset (when the aircraft is not precisely aligned to the projected line leading to the docking gate).

The system architecture and operation serve to guide an aircraft to dock properly at a predetermined stopping point that is appropriate for the aircraft type. If somehow the aircraft type is incorrect (for example, a Boeing 747 being directed to dock at a smaller gate), the system can recognize and identify that the aircraft is not the intended type and will issue instruction, via a visual display unit (18) to the pilot, so as to stop the aircraft, before further damage done to the gate.

## **489 Patent**

489 Patent builds on the invention of 665 Patent (utilizing the same architecture, data structure of tables and steps of detection, identification, tracking and guiding for docking), and added one inventive substance of detecting a feature

(an engine, for example) in the defined spatial volumes of Vi and Vo (inner volume and outer volume), with descriptions given generally in columns 14 – 15.

The inner volume Vi is defined at the spatial volume where an engine is expected to exist "such the echoes from within Vi are considered to come from the engine". The outer volume Vo is the defined space around the "engine where there must be no or very few echoes".

When the threshold value of echoes detected from the aircraft, using the formula of Vi/(Vi+Vo), exceeds an empirical figure (the number of 0.7 is given in the 489 Patent), the existence of the engine (as detected) is confirmed, for further distinguishing aircrafts of similar profiles.

The records showed that, other than this volumetric scanning and numeric comparison of a certain ratio calculation of received echoes detected in the two defined volumes, there is no other added technical contribution made by the patentee.

Having summarily reviewed the substance of the two patents-in-suit, and based upon the controlling laws and authorities, the Court here by made the ruling below:

**III.   Ordered construction.**

1. Claim 14 of 665 Patent: "means for projecting" shall mean:

    Means of using two (2) mirrors (21/22, one for horizontal and one for vertical scan), each mirror separately controlled by a step motor.

    To construe the term any other way, such as one proffered by Plaintiff, would detract from the presumed validity of the patents in suit and unduly impose restrictions upon the public for what the patent did NOT teach.

---

**[proposed] Claim Construction Order**

2.  Claim 14 of 665 Patent: "means for detecting" shall mean:

Blocks of Figure 8, based upon angular step of 0.1 degree interval for horizontal (α) and vertical (β) scanning, using Profile Table I to create a Comparison Table for the detecting task. The Court concurs with Defense counsel's open court concession that the angular step interval can be between 0.01 to 1 degree.

3.  Claim 14 of 665 Patent: "comparison table" shall mean:

The data structure as defined in Table II of 665 Patent, the basis for the stored values is based upon angular interval of between 0.01 degree to 1 degree.

4.  Claim 14 of 665 Patent: "profile table" shall mean:

Table I of 665 Patent, the basis for the stored values is based upon angular step with angular interval of between 0.01 degree and 1 degree.

5.  Claim 14 of 665 Patent: "distance distribution table" (DDT) shall mean:

A derivative data structure as defined in 665 Patent, with its content being generated on a real-time basis as each scan (both vertical and horizontal) is performed to receive echoes of the projected laser pulses. As in the case of profile table and comparison, the interval range for the angular step can be between 0.01 degree and 1 degree.

6.  Claim 1 of 489 Patent: "projecting means" shall mean:

The same meaning as the "means for projecting".

---

**[proposed] Claim Construction Order**

7.  Claim 1 of 489 Patent: "comparing means" shall mean:

    The means of using Profile Table and Comparison Table to check for the matched values echoed back from the projecting means, the data collection and storage is based upon an angular step interval between 0.01 degree to 1 degree.

8.  Claim 1 of 489 Patent: "identifying means" shall mean:

    Calculating the threshold value of echoes from the two volumes Vi and Vo, using the formula of Vi/(Vi+Vo), to determine whether a feature (such as engine) is in its expected location.

9.  Claim 11 of 489 Patent: step of "projecting light pulses onto the detected object" shall mean:

    The step is performed using the "projecting means" disclosed in the Patents-in-Suit.

10. Claim 11 of 489 Patent: step of "comparing the detected shape with a profile corresponding to the known shape and for determining whether the detected shape corresponds to the known shape" shall mean:

    The step is performed using the "comparing means" in Claim 1 of 489 Patent.

11. Claim 11 of 489 Patent: step of "identifying whether the detected object is the known object by determining whether the detected object has the known feature at the known location" shall mean:

    The step is performed using the "identifying means" of Claim 1 of 489 Patent.

**[proposed] Claim Construction Order**

1    SO ORDERED.

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**[proposed] Claim Construction Order**